THE PEOPLE OF THE STATE OF NEW YORK ex rel. WALTER KOONS, Relator, against WALTER A. ELLING, as Sheriff of Ontario County, Defendant.

Supreme Court, Special Term, Ontario County, February 16, 1948.

*Edward J. Gretchen* for relator.

*Thomas Croucher* for defendant.

CRIBB, J.   The relator, Walter Koons, by this habeas corpus proceeding, seeks his release from the sentence of imprisonment under which he is confined in the Ontario County jail.

From the record it appears that on the 26th day of August, 1947, relator and two confederates were arrested and brought before a Justice of the Peace of the Town of Canandaigua in Ontario County, and charged with a violation of sections 1290, 1298 and 1293-c of the Penal Law " against the person and property of The Moose Club, Canandaigua, N. Y.'', in that they stole and carried away "approximately $95.00 in lawful United States currency,'' and appropriated it to their own use and benefit with the intent to deprive the true owner of the use and benefit thereof.   The information upon which the warrant of arrest was issued was signed by a State police officer and also contained the following statement: "That the said money was taken from slot machines by the use of device which is described

as a wire and hand drill, and in this manner they were able to work the said slot machines without inserting a coin of lawful United States currency.''

Relator being represented by competent attorney of his own choice, entered a plea of guilty, and with the consent of himself and his attorney the matter was adjourned to the 11th day of September, 1947, for sentencing. On the latter date the relator stated to the court that he had discharged the attorney who had formerly represented him, and requested an adjournment to enable him to secure other counsel. The matter was accordingly adjourned to the 12th day of September, 1947, when relator appeared with new counsel. Relator was then sentenced to be imprisoned in the Ontario County jail one year, to pay a fine of $300, and to be imprisoned until said fine be paid not exceeding three hundred days. Relator appealed from the judgment of conviction to the County Court where it was dismissed for failure of appearance. Subsequently relator obtained a writ of habeas corpus and the matter was heard by this court.

Defendant, citing *Matter of Hogan* v. *N. Y. Supreme Court* (295 N. Y. 92), questions the jurisdiction of this court to determine the validity of relator's detention because the latter alleges that fraud and trickery was practiced in obtaining his plea of guilty in the Justice's Court. If the only ground advanced by relator in support of the writ was that his plea of guilty was obtained by fraud and trickery, the writ should be dismissed with the right to him to pursue his remedy by motion addressed to the sentencing court. (See *People ex rel. Rose* v. *Additon,* 189 Misc. 102.) However, since relator submits other grounds in support of the writ, this court believes it has jurisdiction in the matter. It does not appear that relator's conviction and sentence was secured through the practice of fraud and trickery as he alleges. It appears that there was some talk between relator's attorney, the District Attorney, the officers and the justice as to the sentence to be imposed *provided* his record was as clear as he had stated. When it subsequently developed that relator had been convicted theretofore of several offenses, the justice imposed the sentence as hereinbefore stated.

At the time sentence was imposed on relator the Justice of the Peace made and signed a certificate of conviction and the relator was received and is still held by the defendant Sheriff of Ontario County. The certificate of conviction was not and has not been filed in the Ontario County Clerk's office. Relator maintains that he is illegally imprisoned because the

certificate of conviction was never filed in said County Clerk's office pursuant to the provisions of section 723 of the Code of Criminal Procedure. The provision that the court shall make and sign a certificate of conviction is mandatory, but the provision that the certificate shall be filed within twenty days is directory. (*People* v. *Rosenthal,* 171 Misc. 954; *Village of Solvay* v. *Town of Geddes,* 247 App. Div. 89.) As early as 1889 in *People ex rel. Slatzkata* v. *Baker* (3 N. Y. S. 536) the court held that failure to file the certificate of conviction was not cause for the discharge of a prisoner.

Relator further urges that he is unlawfully detained because the certificate of conviction reads: "Execution of judgment is suspended." The Justice of the Peace used a printed form which provides for writing in required words and striking out the printed words not applicable to the case. Immediately following the above-quoted words he wrote the following: "Credit to be given for time already served, or 16 days." Obviously execution of judgment was not suspended, and his failure to strike out the first-quoted words was a clerical error only and is no cause for the discharge of relator.

A novel and interesting question is presented by the further ground, submitted by relator in support of the writ, to the effect that no title, property or possessory rights can be acquired by the owner or possessor of gambling devices, and that there can be no larceny of property not subject to ownership.

It is conceded that the money with the larceny of which relator was charged was removed by him and his confederates from slot machines, commonly referred to as "one armed bandits", located in a room of the Moose Club, by the drilling of a small hole in the machine, through which, by means of an inserted wire, the mechanism was tripped allowing moneys inside to drop down into an exposed receptacle in the same manner as if the machine had been operated in the usual way and had paid out in some amount. The information charged the relator with committing the crime of petit larceny against the property of the named club; the relator plead guilty to the charge. However, if the moneys could not be the subject of larceny, and, as he contends, he therefore committed no crime, his plea of guilty was a nullity. A plea of guilty may not be substituted for the crime itself. (*People* v. *Foster,* 182 Misc. 73.) Relator maintains that his plea of guilty was a nullity because the moneys were taken from unlawful slot machines in which, as well as in their contents, no person had or could have any title or possessory rights, and that therefore there was no larceny from the "true owner"

as contemplated by section 1290 of the Penal Law. The question is therefore presented as to whether money in an unlawful slot machine may be the subject of larceny. Counsel have cited no cases, and the independent search of this court has discovered none determinative of the question.

In this case relator was not convicted of stealing the slot machines, which concededly were gambling devices and unlawful under the provisions of section 982 of the Penal Law, but rather of stealing moneys contained in them. He was convicted of petit larceny. It is the opinion of this court that the reasoning adopted by the court in *People* v. *Otis* (235 N. Y. 421) is equally applicable in the instant case. In that case the defendant having been indicted for stealing a quantity of whiskey, was convicted of petit larceny. The whiskey was unlawfully possessed under the provisions of the National Prohibition Act. The question presented was whether the conviction could be sustained under such circumstances. The court said: "The possessor, not being able to make any legal use of it, it is said the liquor itself has no value. This is, however, to make the value of a chattel to its possessor the test as to whether it is the subject of larceny. Such is not the rule. (*People* v. *Gilbert,* 163 Mich. 511.) It is enough if the object taken has inherent value. (*Commonwealth* v. *Riggs,* 14 Gray, 376.) No one can doubt that whiskey has such value. It may be sold by the government and the proceeds covered into the treasury. It may be sold by druggists. That it is held illegally is immaterial." Although the statute under discussion in that case specifically provided that "no property rights shall exist" in liquor illegally possessed, the court held that such liquor could be the subject of larceny, and after referring to the statutory provisions for the issuance of search warrants, the seizure and final disposition by the courts of liquor so illegally possessed, and the prohibitory provision as to property rights in such liquor, the court further said: "Property rights in such liquor are not forever ended. They pass to the government."

The Legislature enacted section 1290 and its corelated sections of article 122 of the Penal Law for the purpose of preventing stealing. Section 1293-c of that article makes it unlawful to obtain any property or service from a lawful slot machine by any means other than by the deposit of the required lawful coin of the United States. Section 982 of article 88 of the Penal Law defines unlawful slot machines and prohibits their manufacture, use, etc. By subsequent sections of article 88 provision is made for the seizure of such unlawful slot machines together with any

money or other contents of value found therein, and for the ultimate destruction of such machines and the disposition of such money or other contents by the court or other officers therein named. In this case the reported theft of the moneys from the slot machines resulted not only in the apprehension and arrest of the relator and his confederates, but also in the prompt seizure by the officers of the slot machines and remaining contents therein pursuant to the statutory provisions above mentioned. Subsequently by orderly court procedure the machines were destroyed, and the moneys taken therefrom by the officers, as well as $95 of the moneys stolen therefrom by relator and his confederates and subsequently surrendered to the officers by them, were paid over to the County Welfare Fund. When the officers found the money in the slot machines, it at that very moment was the known property of the County Welfare Fund. Why was this so? Because it had been found in an unlawful slot machine. Can it then reasonably be said that one minute before it was so found, there was no lawful right of ownership or possession in that same money? This court is of the opinion that all the money in these slot machines, both before and at the time of the alleged theft, belonged to the welfare fund with the right to possession under the statute. Actual possession, of course, was suspended until such time as the officers might seize the same.

It seems that there is yet another reason for the dismissal of the writ in this case. Granting for the moment that relator is correct in his argument that there was no lawful owner of the money when he took it from the slot machines and that therefore he committed no crime, he would still be guilty of larceny under section 1290 of the Penal Law which provides in part as follows: "Hereafter it shall be immaterial in, and no defense to, a prosecution for larceny that: * * * 2. The accused in the first instance obtained possession of, or title to, such property lawfully, provided he subsequently wrongfully withheld or appropriated such property to his own use or the use of any person not entitled to the use and benefit of such property ". Under the statute the County Welfare Fund was entitled to the use and benefit of the money taken from the slot machine. If a person finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and he appropriates such property to his own use, without having first made every reasonable effort to find the owner and restore the property, he is guilty of larceny. (Penal Law, § 1300.) At the moment he finds such property the true owner is unknown. Knowing that

such an innocent finder of lost property *may* be guilty of larceny, and at the same time holding that another person who, with intent to appropriate moneys to his own use, by some device other than the deposit of a United States coin as required to operate it, removes and takes away such moneys from a slot machine (even an unlawful slot machine as in this case), *cannot* be guilty of larceny, is an absurdity and beyond the realm of common sense.

At the time of his conviction on a plea of guilty relator made no objection to the information. In this proceeding he now raises for the first time questions as to its sufficiency, one of which is that it did not specify or mention any lawful owner of the moneys taken from the machines. That is immaterial. A trial undoubtedly would have determined the ownership of the money to have been in the welfare fund and not the Moose Club. But it is certain ownership would have been found not to be in relator, and it is equally certain that he and his confederates intended to deprive the owners, whoever they might be, of the use and benefit of the moneys taken.

Relator's argument that the writ must be sustained because the information charged him with violation of section 1293-c of the Penal Law which he contends relates only to stealing from lawful slot machines, while he actually took the money from unlawful slot machines, is without merit. The information further stated how and where the money was taken "from slot machines". Relator's act constituted petit larceny in violation of sections 1290 and 1298 of the Penal Law as alleged and he pleaded guilty to that charge, and thereby waived any defects in the information and gave the court jurisdiction both of the subject matter of the charge and of the person of the relator. (*Francisco* v. *Little Falls Dairy Co.,* 163 Misc. 165; *People ex rel. Rose* v. *Additon,* 189 Misc. 102, *supra.*)

This court is not unmindful of the fact, as submitted by relator's brief, that our courts have held that the law affords a professional gambler no protection at all as to the moneys he takes in. Apparently relator labors under the mistaken belief that the dismissal of his writ would afford some protection or relief to the Moose Club or whoever was responsible for the maintenance of the slot machines on its property. Such is not the fact. So far as the facts reveal in this case, the relator was not a gambler, professional or otherwise, and was not gambling with the Moose Club or whoever was maintaining the slot machines. Neither did they make the information against relator They could not, and apparently did not, attempt to recover the stolen moneys from him. A State police officer signed the

information. No advantage can accrue to the persons who maintained the slot machines either by dismissing or sustaining the writ.

For the above reasons the writ must be dismissed. To hold otherwise would be to condone stealing. If such is not the law, then the Legislature promptly should enact appropriate legislation to remedy the situation — not for the purpose of protecting gambling machines of any sort, but to put an end to a practice which is becoming common, and which at best is a reprehensible racket degrading to the morals of those who engage in it and an offense to the public policies of our State.

An order may be issued dismissing the writ of habeas corpus heretofore granted in this proceeding and remanding relator to the custody of the Sheriff of Ontario County to serve the remainder of his sentence in accordance with the provisions of law applicable thereto.