James H. Boomer, J.
The petitioner was arrested on a warrant based upon an information charging him with the crime of falsely reporting an incident in violation of section 240.50 of the Penal Law. Awaiting trial, he brings this habeas corpus proceeding seeking his release on the ground that the information fails to state any crime. The respondent contends that the writ of habeas corpus may not be used to test the sufficiency of an indictment and, in any event, the information does state a crime.
“ The right to challenge an indictment or an information by the writ of habeas corpus is strictly limited. It is not to be employed as a substitute for a demurrer or a motion to dismiss an indictment or information ” (25 N. Y. Jur., Habeas Corpus, *222 § 44). Nevertheless, “ the remedy [of habeas corpus] is available where the indictment or information is insufficient to confer jurisdiction on the court * * * as where the information # # * fails to charge any crime ” (25 N. Y. Jur., Habeas Corpus, § 44, citing People ex rel. Koons v. Elling, 190 Misc. 998; People ex rel. Prudhomme v. Superintendent of N. Y. State Reformatory, 21 N. Y. S. 2d 563; also People ex rel. Guido v. Calkins, 9 N Y 2d 77, where the court, without discussing the propriety of the remedy of habeas corpus, determined that the information was sufficient and dismissed the writ).
Here, the information charges that the petitioner “ did commit the Crime of Falsely reporting an Incident, a Class B Misdemeanor in violation of Sec. 240.50 (3) of the Penal Law of the State of New York in that he did on or about the 31st day of March 1971, at about 11 o’clock p.m. in the Town of Greece, County of Monroe, State of New York at 85 Greenfield Road did falsely report false information relating to an actual incident to the police, knowing at the time that such information was false, by reporting that he did not know what caused the death of one Donald Janneck and reporting that said Donald Janneck died on the living room floor, when he in fact died in an upstairs bedroom and defendant did assist with moving the body to the living room floor at 85 Greenfield Road to conceal the fact that they had been sniffing Carbona in the upstairs bedroom at said address.”
Section 240.50 of the Penal Law reads in part as follows: “A person is guilty of falsely reporting an incident when, knowing the information reported, conveyed or circulated to be false or baseless, he: * * * 3. Gratuitously reports to a law enforcement -officer or agency (a) the alleged occurrence of an -offense or incident which did not in fact occur; or (b) an allegedly impending occurrence of an offense or incident which in fact is not about to occur; or (e) false information relating to an actual offense -or incident or to the alleged implication of some person therein.”
It is undisputed that the petitioner and some of his friends were sniffing Carbona and one of them lost consciousness and died. Someone called the police and when they arrived they questioned the petitioner and the others present. In response to this questioning the petitioner gave the information alleged to be false.
Petitioner contends that the information fails to state any crime since it does not allege, nor from the facts stated can it be inferred, that the false report was made “ gratuitously.” *223 The merit of this argument depends upon the meaning, in the context of subdivision 3 of section 240.50 of the word, 1 ‘ gratuitously. ’ ’
Most dictionaries assign to the word “ gratuitous ” two primary meanings: 1. Given without cost to the recipient; free of charge. 2. Without sufficient cause, reason or ground; groundless; baseless. (See, e.g., Webster’s Third New International Dictionary of the English Language.)
It is illogical to assume that the Legislature here intended the word ‘ ‘ gratuitously ’ ’ to mean, ‘ ‘ without pay or recompense ”. Surely, the Legislature, in proscribing false reporting as a crime, did not intend to create an exception where the person making a false report expected to be paid.
It is also illogical to assume that the Legislature meant that word to be synonymous with “ groundless ” or “baseless.” The first sentence of section 240.50 requires, as an element of the crime of false reporting, that the person charged knew ‘£ the information reported, conveyed, or circulated to be false or baseless.” It was not necessary, therefore, for the Legislature to use the word gratuitously in subdivision 3 merely to repeat this requirement.
The word, “ gratuitous ”, however, has other shades of meaning. It may mean, “ given freely” or “voluntary.” (Brittanica World Language Dictionary, Yol. 1 [1963 ed.].) The word is derived from the Latin ‘ ‘ gratuitas ’ ’ meaning, ‘1 freely given”, “spontaneous” (The Random House Dictionary of the English Language [1966 ed.]). It is probable that the Legislature intended to use the word ‘ ‘ gratuitously ’ ’ as meaning “ voluntarily ” in the sense that the false information must be volunteered and not solicited.
Support for this construction is derived from a reading of the first two subdivisions of section 240.50. Subdivision 1 refers to the initiation or circulation of “ a false report or warning of an alleged occurrence or impending occurrence of a fire, explosion, crime, catastrophe or emergency under circumstances in which it is not unlikely that public alarm or inconvenience will result ’ ’. The word ‘ ‘ gratuitously ’ ’ is not used in this subdivision. The grave nature of such a false report, which may cause public alarm or inconvenience, warrants the making of such a false report a crime whether the false information is volunteered or is solicited.
Subdivision 2 refers to a false report, made to officials having the function of dealing with emergencies, of “an alleged occurrence or impending occurrence of a fire, explosion or other *224 catastrophe or emergency which did not in fact occur or does not in fact exist ’ Again the word ‘1 gratuitously ’ ’ is not used. Again it was apparently thought that the serious consequences that may result from false alarms of this nature warranted making the reporting of such false information a crime whether such information is volunteered or solicited.
But subdivision 3 uses the word ‘ ‘ gratuitously ’ ’ in connection with false information given to a law enforcement officer relating to any offense or incident apparently no matter how minor the offense or incident may be. By the use of the word “ gratuitously ” the Legislature seemingly intended to make the giving of such false information a crime only where that information is volunteered and is unsolicited. See also, sections 727 and 728 of the Penal Law of 1909 from which the present section 240.50 was derived. Section 728 contains the word “ gratuitously” while section 727 does not. And it appears that the crime defined in section 727 presents more of a danger to the public than that defined in section 728.
While many unsolicited false reports concerning minor offenses or incident's may seriously hamper law enforcement by causing police officers to dissipate their energies investigating these false reports, that danger is not present to the same extent where the report or information is solicited by the police in the course of an investigation. I cannot find, therefore, that the Legislature intended this subdivision 3 to apply to false answers given to police officers in response to questions put by them during the course of an investigation.
Since the information does not charge the petitioner with giving the false information ‘1 gratuitously ’ ’, and it is undisputed that the alleged false information was given to the police during the course of an investigation and in response to questions put to the petitioner, I hold that the information fails to charge the petitioner with any crime. Thus the petitioner is illegally detained and the writ must be sustained.