Michele CHIARAMONTE, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 800, Docket 79–4191.

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1980.

Decided June 23, 1980.

Noreen Quirk, New York City (Fried, Fragomen, Del Rey, Bernsen & O'Rourke, P. C., New York City, of counsel, Martin L. Rothstein, New York City, on the brief), for petitioner.

Robert S. Groban, Jr., Sp. Asst. U. S. Atty., S. D. N. Y., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Peter C. Salerno, Asst. U. S. Atty., S. D. N. Y., New York City, of counsel), for respondent.

Before MOORE, MULLIGAN and MES-KILL, Circuit Judges.

MESKILL, Circuit Judge:

Over nine years after the Immigration and Naturalization Service first rebuffed his attempts to gain lawful permanent residence in this country on the ground that his prior convictions for crimes evincing moral turpitude rendered him permanently excludable under Section 212(a)(9) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9), Michele Chiaramonte petitions for review of a decision of the Bureau of Immigration Appeals ("BIA") denying him a waiver of inadmissibility and adjustment

of status under Sections 212(h) and 245, 8 U.S.C. §§ 1182(h) and 1255, and declining to remand the matter to the Immigration Judge for consideration of his request for a suspension of deportation under Section 244, 8 U.S.C. § 1254. Finding no error in these various administrative determinations, we dismiss the petition.

I.

Michele Chiaramonte is a citizen of Italy, where he was born on March 5, 1924, one of five children. On October 11, 1943, at the age of 19, petitioner and his minor brother were apprehended and charged with having stolen 27 kilograms (approximately 60 pounds) of olives. He was prosecuted under Article 624 of the then prevailing Italian Penal Code, which, in translation, provided:

> Theft.
>
> Whoever takes possession of the movable property of another, by taking it away from the person who holds it, for the purpose of deriving benefit from it for himself or for others, shall be punished by imprisonment for up to three years and a fine of from 12,000 to 200,000 lire. . . .

One week following his arrest, Chiaramonte was tried by an Italian civilian court located in Partinico, Sicily. In the judgment, the only contemporaneously created document submitted to us, the court noted that the identity of the owner of the olives had not been established, but concluded, "there are present all the legal requirements stipulated by the legislature . . . which all indicate violation of the decree of ownership . . . ." Accordingly, petitioner was adjudged guilty of the offense, and sentenced to 15 days' imprisonment, execution of which was suspended for a five year probationary period, and a 300 lire fine.

Further details concerning this episode are scant. Petitioner, both in his briefs to this Court and in his abbreviated testimony before the Immigration Judge, averred that the theft was necessitated by his family's need for food. Historical and public records submitted to us indicate that while the Italian government had capitulated to the Allied Forces prior to the commission of this crime, fighting continued to rage on the mainland of Italy, and general conditions prevailing throughout Italy may be safely presumed to have entailed substantial privation.

Notwithstanding his term of probation, on February 10, 1944, some four months after his prior conviction, petitioner was arrested, again in the company of a minor brother, and charged under the same penal statute with having "taken possession of about 100 kg. of wood to the detriment of one Benedetto Scalia." Chiaramonte confessed his guilt and received, from the same civilian district court as had previously tried him, a sentence of five months' imprisonment and a 1,000 lire fine. For reasons which are not revealed, the Superior Court of Palermo, on appeal of petitioner's sentence, ordered its execution suspended and placed petitioner on a five year term of probation, presumably to run concurrently with that which he had received for the theft of the olives.

In 1948 petitioner married and he subsequently fathered two sons and two daughters. At about the time of his marriage, Chiaramonte's father and each of his four siblings immigrated to the United States, where they are now naturalized citizens. Some twenty years later, petitioner embarked on this same path, and in April 1970, applied at the United States Consulate in Palermo for a fourth preference immigrant visa. The request was denied on the ground that his two prior criminal convictions rendered him excludable under Section 212(a)(9), 8 U.S.C. § 1182(a)(9) [1], which,

---

1. The statute in pertinent part provides:
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States.

* * * * * *

(9) Aliens who have been convicted of a crime involving moral turpitude (other than a purely political offense), or aliens who admit having committed such a crime, or aliens who admit committing acts which constitute the essential elements of such a crime . . . .

*inter alia,* bars from immigration to this country any alien who has been convicted of a crime deemed to involve moral turpitude.

Approximately one year later, in the spring of 1971, petitioner was issued a non-immigrant visitor's visa to the United States, valid until June 30, 1972, on the ground that the illness of one of his brothers required his attendance. Contrary to the terms and conditions of his entry into this country, petitioner within three months of his arrival unlawfully commenced employment. Shortly thereafter, he applied to the INS for a waiver of excludability and adjustment of status under Section 212(h), 8 U.S.C. § 1182(h),[2] which authorizes the Attorney General to lift the disability imposed on an alien convicted of a crime of moral turpitude upon a number of conditions, most notably a showing that the alien's exclusion would result in extreme hardship to any of several enumerated relatives who had previously obtained American citizenship or permanent resident status.

This administrative application was denied on May 31, 1972, and petitioner was ordered to depart in accordance with the original June 30 expiration of his visitor's visa. Undaunted by this setback, Chiaramonte overstayed his visa and in November arranged for the illegal entry into the United States of his wife and two sons, accomplished through a cash payment to an unidentified individual who smuggled them into the country from Canada. In 1973, petitioner resumed his illicit employment, utilizing his wages to purchase a one-third interest in the Chiaramonte family home, in which he had been residing, and also to contribute to the support of his aged father.

Several months thereafter, petitioner was served by the INS with an order to show cause on July 31, 1973, why he should not be deported. At the hearing, petitioner conceded his deportability, but again requested a waiver of inadmissibility and adjustment of status under Section 212(h), largely on the theory that his two crimes were part of a single plan of action, undertaken under extenuating circumstances. Immigration Judge Francis J. Lyons denied the application, but granted petitioner the right of voluntary departure by August 31.

While the matter was on appeal to the BIA, Chiaramonte's son Francesco married an American citizen and thereby obtained resident alien status. Since petitioner could now claim that his expulsion would cause extreme hardship to a family member specified in Section 212(h), he moved for and was granted a remand to the Immigration Judge to consider this potential ground for discretionary relief.

Inexplicably, the deportation proceeding did not reconvene until February 20, 1976, some two and one-half years after the remand, and then only briefly. After petitioner's submission of cursory affidavits from family members reciting in conclusory fashion that they would suffer extreme hardship by virtue of the absence of petitioner, the hearing was adjourned, ostensibly so that the INS could investigate the claim. This occasioned a one and one-half year delay, and the case was resumed before Immigration Judge Lyons in August,

---

**2.** The statute in pertinent part provides:

(h) Any alien, who is excludable from the United States under paragraphs (9), (10), or (12) of subsection (a) of this section, who (A) is the spouse or child, including a minor unmarried adopted child, of a United States citizen, or of an alien lawfully admitted for permanent residence, or (B) has a son or daughter who is a United States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States.

1977. By this time, petitioner's wife and unmarried son had become the subjects of a separate deportation proceeding. The Immigration Judge heard petitioner's testimony, and that of his son Francesco, then 26 years old, married, gainfully employed and living apart from his family. Francesco stated, in pertinent part, that the expulsion of his father would cause him to feel "sad" and "alone."

On March 7, 1978, the application was denied in a written opinion. Judge Lyons found, with little discussion, that petitioner was properly categorized as an excludable alien. Turning to the prayer for discretionary relief, Judge Lyons held that only the hardship accruing to Chiaramonte's son Francesco could be considered. Unmoved by Francesco's tepid plea, the Immigration Judge concluded that it did not make out a compelling case for the extraordinary remedy requested. Moreover, Judge Lyons noted, even if petitioner had qualified for discretionary consideration, such relief would be inappropriate given Chiaramonte's pattern of disregard of INS supervision and repeated violation of the immigration laws.

On appeal to the BIA, petitioner asserted four grounds of error. First, he claimed that he had been improperly categorized as excludable since his convictions did not entail moral turpitude under comparable provisions of American criminal law. Second, he argued that the Immigration Judge, in denying him discretionary relief, committed error in restricting the consideration of hardship to his son and failing to take into account the suffering that would befall others, particularly petitioner's ailing father. Third, it was claimed that Chiaramonte had been unfairly deprived of discretionary re-

lief because the Immigration Judge was unduly swayed by the illegal entry into the United States of petitioner's wife and sons. Lastly, since by this time Chiaramonte had been in this country for seven years, he asked, for the first time, that the matter be again remanded to the Immigration Judge to entertain an application for suspension of deportation, as provided under Section 244, 8 U.S.C. § 1254.[3] The appeal was in all respects denied and this petition followed.

## II.

Two issues are presented: whether Chiaramonte was properly classified as excludable by virtue of his prior convictions, and if so, whether discretionary relief from that disability, either by way of a waiver of inadmissibility and adjustment of status or suspension of deportation, was appropriately denied.

### A. *Excludability of Petitioner*

 It has been long acknowledged by this Court and every other circuit that has addressed the issue that crimes of theft, however they may be technically translated into domestic penal provisions, are presumed to involve moral turpitude. *Brett v. INS*, 386 F.2d 439 (2d Cir. 1967), *cert. denied*, 392 U.S. 935, 88 S.Ct. 2304, 20 L.Ed.2d 1394 (1968); *Soetarto v. INS*, 516 F.2d 778 (7th Cir. 1975); *Giammario v. Hurney*, 311 F.2d 285 (3d Cir. 1962). Of course, it hardly takes a flight of imagination to conceive of circumstances in which acts technically constituting this type of offense could be viewed as entirely free of such a stigma. However, an alien convicted of theft cannot demonstrate such mitigation by relitigating the merits of the case before the INS or reviewing courts.

---

**3.** The statute in pertinent part provides:

(a) As hereinafter prescribed in this section, the Attorney General may in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a

continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . ..

■ Petitioner accepts as axiomatic that neither the INS nor the courts may entertain a challenge to the legitimacy of a criminal conviction duly obtained under the laws of a foreign country. To hold otherwise would entail disrespect for the judgments of that sovereign, and thus undermine the principle of international comity. More significantly, such collateral attacks as a practical matter could not reasonably provide a fair forum for ascertaining the truth of the assertion. The proceeding would be conducted in a different court, in a different country, geographically and temporally far removed from the locus of the crime. *Lennon v. INS*, 527 F.2d 187, 194 n.16 (2d Cir. 1975).[4] Accordingly, both administrative and judicial review of such matters must be confined to the official records of the original proceedings, most particularly, the court's ultimate judgment.

■ For precisely these same reasons, an alien adjudged guilty by a foreign tribunal of a crime of moral turpitude may not attempt to demonstrate through collateral attack in our forums that his actions were only undertaken in response to exceptional circumstances and that he is morally blameless. As Judge Magruder noted in *Pino v. Nicolls*, 215 F.2d 237, 245 (1st Cir. 1954), *rev'd on other grounds sub nom. Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955), "If the crime in its general nature is one which in common usage would be classified as a crime involving moral turpitude, neither the administrative offi-

cials in a deportation proceeding nor the courts on review of administrative action are under the oppressive burden of taking and considering evidence of the circumstances of a particular offense so as to determine whether there were extenuating factors which might relieve the offender of the stigma of moral obliquity. See *United States ex rel. Robinson v. Day*, 2 Cir., 1931, 51 F.2d 1022." Unless the records of the original proceeding, including the judgment, clearly reflect such extenuating circumstances, neither the INS nor the courts may consider extrinsic evidence in determining the moral culpability of the offense. *Cf. Schieber v. INS*, 520 F.2d 44, 49 n.20 (D.C. Cir. 1975); *Soetarto v. INS, supra*, 516 F.2d at 780.

■ In recognition of this limitation, petitioner advances two arguments. First, he asks the Court to take judicial notice of the harsh conditions prevailing in Italy in late 1943 and early 1944, and on this basis urges us to find that the theft of necessaries in such circumstances does not evidence a lack of good character. We cannot so simply reach such a conclusion.[5] The records submitted to the Court do not indicate whether petitioner's acts were in fact due to those general conditions of hardship experienced throughout Italy at the time. Moreover, we cannot say that the historical records provided us by petitioner attest to conditions of such surpassing privation that the theft of essentials was necessarily free from moral taint. While theft may be excusable

4. "To make the facts of each individual case determinative would require the Board or the reviewing court to, in effect, retry the case on which the conviction was based. This, of course, would pose insurmountable obstacles. Witnesses would be scarce or impossible to find and the deportation proceedings would be interminably delayed. In addition, the events may well have occurred in foreign lands in the dim past. All we can consider is whether the statute permits the conviction of an individual who would be quite innocent under our system of criminal justice." *Lennon v. INS*, 527 F.2d 187, 194 n.16 (2d Cir. 1975).

5. Petitioner's reliance on *Tutrone v. Shaughnessy*, 160 F.Supp. 433 (S.D. N.Y. 1958), and *Vidal y Planas v. Landon*, 104 F.Supp. 384 (S.D. Cal. 1952), for the proposition that the Court may take cognizance of the prevailing social

and economic conditions in assessing the depravity of particular crimes is misplaced. In both those cases, the mitigating factors which relieved petitioners of presumed moral culpability were recited in official, contemporaneously created records. To the extent that they are cited for the principle petitioner advances, they are contrary to governing authority in this and other circuits. See *Lennon v. INS, supra*, 527 F.2d at 194 n.16; *Soetarto v. INS*, 516 F.2d 778 (7th Cir. 1975); *Morasch v. INS*, 363 F.2d 30 (9th Cir. 1966); *Giammario v. Hurney*, 311 F.2d 285, 287 n.4 (3d Cir. 1962); *Pino v. Nicolls*, 215 F.2d 237 (1st Cir. 1954), *rev'd on other grounds sub nom. Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955); *Zgodda v. Holland*, 184 F.Supp. 847 (E.D. Pa. 1960).

when an individual or his family is going hungry amidst a sea of plenty, a different characterization applies when a condition of scarcity prevails throughout the area and limited quantities of supplies are being distributed fairly. In such a situation, theft may deprive others equally deserving and equally oppressed of their fair share of necessaries, and thievery in this environment is as morally repugnant as any common larceny.

Petitioner's second and theoretically more viable argument is that his prior convictions are not, on their face, tantamount to larceny, the most nearly equivalent offense under American law. In this regard, petitioner notes that with respect to his theft of olives, the identity of the owner was never established. He consequently contends that his derelictions were more akin to a petty offense such as a misappropriation of abandoned property. *Cf. Lennon v. INS, supra.* This approach is unavailing for a variety of reasons.

▉▉▉ Proof of the identity of the owner of purloined property is not a requisite element of the crime of larceny as it is defined in most American jurisdictions. For example, under the laws of the states encompassed by this Circuit, larceny is uniformly described as the intentional and nonconsensual taking of property from its owner—this last term being broadly defined as any entity with a superior possessory interest.[6] While specificity as to the rightful owner may be helpful in establishing that the property was in fact stolen, the crime is proven when it is demonstrated that the goods were taken with the knowledge that they belonged to one other than the thief.

▉▉▉ This is particularly appropriate in respect to the theft of common, fungible commodities such as olives, and in circumstances where one found in unexplained possession of a large quantity of such foodstuffs might reasonably be presumed to have stolen them, albeit the victim of the crime has remained anonymous. Petitioner, to our knowledge, has never claimed that he was their rightful owner. The Italian tribunal, while conceding that the identity of the owner had remained unknown, nonetheless concluded that petitioner had "violated the decree of ownership," and thus, it is clear that the olives did in fact have an owner. The requisite elements of the crime charged, as set forth under the Italian Penal Code, and larceny as understood in American law, are seemingly congruent, and for this reason, *Lennon v. INS, supra,* relied on extensively by petitioner, is irrelevant.[7] Furthermore, whatever the vicissitudes of the state laws of larceny, it is clear that for immigration purposes, a crime of moral turpitude is involved when, as here, one carries away property knowing it to belong to another. Gordon & Rosenfield, Immigration Law and Procedure § 4.14(d)(1977).

▉▉▉ Finally, even if we were to adopt petitioner's argument, his classification would not be affected since his second conviction, involving a named victim, is not susceptible to this attack. Chiaramonte has seemingly abandoned his claim, which the Immigration Judge dismissed as wholly unpersuasive, that the two offenses were part of an ongoing plan and therefore constituted only a single crime. Thus, the conclusion is inescapable that petitioner was properly held by the INS to have committed a crime of moral turpitude which mandates his exclusion. Relief from the burdens of that status can be obtained only through executive clemency.

### B. Denial of Discretionary Relief

▉▉▉ Before the BIA, petitioner unsuccessfully sought discretionary relief, ei-

---

6. N.Y. Penal Law §§ 155.00, 155.05 (McKinney); *People ex rel. Koons v. Elling,* 190 Misc. 998, 77 N.Y.S.2d 103 (Sup. Ct. N.Y. Cty. 1948); Conn.Gen.Stat.Ann. § 53a–119; *State v. Graham,* 4 Conn.Cir.Ct. 50, 225 A.2d 205 (1966); Vt.Stat.Ann. Tit. 13, §§ 2501, 2502; *State v. Carsvant,* 64 Vt. 405, 23 A. 636 (1892).

7. Similarly, two administrative decisions invoked by petitioner, *Matter of T,* 2 I & N Dec. 22 (BIA 1944), and *Matter of P,* 2 I & N Dec. 887 (BIA 1947), are inapposite. In both cases the alien had been convicted under a Canadian penal provision which was entitled "theft," but which encompassed a myriad of offenses, only some of which under our law involved moral turpitude.

ther through reversal of the Immigration Judge's refusal to grant a waiver of inadmissibility and adjustment of status under Sections 212(h) and 245, or alternatively through a remand to enable the Immigration Judge to pass upon his belated application for a suspension of deportation under Section 244. Before a grant of clemency could be considered under either approach, petitioner was required to demonstrate his eligibility, a question of law and fact which must be determined in accordance with the governing statute and precedent. *Foti v. INS*, 375 U.S. 217, 228–29 n.15, 84 S.Ct. 306, 313–314, 11 L.Ed.2d 281 (1963); *Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957); *Marino v. INS*, 537 F.2d 686, 690 (2d Cir. 1976). It was upon this threshold that petitioner's application for discretionary relief foundered. We hold that the BIA's finding on this matter was properly arrived at.

Eligibility criteria under Section 212(h) or 244 include a demonstration that petitioner's expulsion will result in "extreme hardship" to certain immediate family relations —spouse, parent or child—who are citizens or resident aliens. Additionally, under Section 244, the Attorney General may consider the hardship which would be incurred by the alien in the event of his deportation. In attempting to satisfy this prerequisite with respect to the enumerated family members, Chiaramonte was restricted to presenting evidence of the detriment which would inure to his son Francesco. No comparable showing was permitted as to his father since under relevant statutory provisions, petitioner could no longer qualify as a child, and hence his father could not be viewed as a parent for such purposes. Reviewing only the testimony of Francesco, the BIA agreed with Judge Lyons that his claim of bereavement over the threatened expulsion of his father did not rise to the level of extreme hardship and thus petitioner was ineligible for discretionary relief.

We hold that the extreme hardship assessment was properly made. Under Section 101(b)(2), 8 U.S.C. § 1101(b)(2), a "parent" is defined as an individual having a paternal or maternal relationship with a "child," who, in turn is defined under Section 101(b)(1), 8 U.S.C. § 1101(b)(1), as an unmarried person under 21 years of age. Since petitioner plainly does not qualify as a child, his father cannot be deemed a parent under either Section 212(h) or 244, and any hardship visited upon him by virtue of his son's expulsion from the United States is not cognizable for this purpose. *Cf. Beltre v. Kiley*, 470 F.Supp. 87 (S.D. N.Y.), aff'd 614 F.2d 1285 (2d Cir. 1979); *Nazareno v. Attorney General*, 512 F.2d 936 (D.C. Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975); *see also Matter of Van Pamelin*, 12 I & N Dec. 11 (BIA 1966).

 The Third Circuit's recent decision in *Tovar v. INS*, 612 F.2d 794 (3d Cir. 1980), does not dissuade us from this conclusion. In that case, the court held that the hardship inuring to a five-year-old citizen by virtue of the deportation of his grandmother with whom he lived apart from his natural parents and upon whom he was dependent could be considered in a suspension of deportation application, notwithstanding that grandchildren are not enumerated as one of the class of protected persons under Section 244(a)(1). There is a significant distinction between *Tovar* and the case at bar. As may be gleaned from the Immigration and Nationality Act's definition of parent in terms of that individual's relationship with a child, Congress was particularly concerned with the welfare of minors. Accordingly, some latitude in construction of the statute to cover a perhaps unforseen situation, in order to benefit a child, may in fact further the intent of Congress. While we fully understand the court's solicitude in *Tovar*, it appears to us to be beyond our lawful powers in the instant case to extrapolate from clearly and precisely defined statutory eligibility requirements. The regulation of immigration is a matter entrusted to Congress, *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), and we are not free to substitute our judgment for that of the national legislature merely because the statutory scheme dictates a severe or unfortunate result in a particular case. *Cf. Califano v. Jobst*, 434 U.S. 47, 53, 98 S.Ct. 95, 99, 54 L.Ed.2d 228 (1977); *Termini v. Califano*, 611 F.2d 367, 370 (2d Cir. 1979).

We also concur in the assessment of Judge Lyons and the BIA that Francesco's testimony, without more, is insufficient to constitute a showing of extreme hardship. As recounted by Francesco, the difficulty accruing to him due to his father's departure would be little more than the normal melancholy incident to a son's separation from his father. While "extreme hardship" has no precise definition, the cases are consistent in finding it lacking where the deportation would result in nothing more than the emotional or even financial tribulations which generally follow the separation of a family. *Noel v. Chapman*, 508 F.2d 1023, 1027–28 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975); *Lee v. INS*, 550 F.2d 554, 556 (9th Cir. 1977); *Davidson v. INS*, 558 F.2d 1361 (9th Cir. 1977); *Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977). Accordingly, under our limited scope of review as to this determination, *see Banks v. INS*, 594 F.2d 760, 762 (9th Cir. 1979), we cannot overturn the conclusion reached by the Immigration Judge.

Under Section 244, the detriment which the alien himself may suffer may also be considered in assessing whether the deportation will entail extreme hardship. The BIA found that petitioner did not satisfy this requirement and under our circumscribed powers of review, we cannot say that that conclusion constituted an abuse of discretion. Chiaramonte had lived apart from his siblings and father for twenty years prior to his arrival here, and in view of the pendency of the deportation proceedings against his wife and son, it seems that he may shortly be joined in his country of origin by these members of his immediate family. Moreover, petitioner's economic damage was not shown to be unduly severe.

In light of its finding that the exceptional circumstances necessary to support a claim of extreme hardship had not been demonstrated, the BIA did not consider whether the Immigration Judge abused his discretion in failing to grant the discretionary remedy sought, and in particular, whether a denial of such relief in whole or in part could properly have been based upon the petitioner's history of violating the terms and conditions of his stay in this country. *See, e. g., Jain v. INS*, 612 F.2d 683 (2d Cir. 1979). Consequently, those issues are not before us.

In affirming the decision of the BIA, we are not unmindful of the seeming harshness in turning petitioner away because of two minor criminal escapades committed in his youth. Neither are we unaware that INS' steadfast denials of Chiaramonte's various applications may seem somewhat quixotic when viewed against the veritable floodtide of immigration, legal and illegal, which this nation has experienced of late. Such perceptions, however, do not license us to override the legislative scheme when, as here, it has been properly implemented.

The petition is dismissed.