992 F.2d 1222
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Maureen FARRELL-MURRAY, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-9549.
 United States Court of Appeals, Tenth Circuit.
 April 28, 1993.
 
 1
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 VAN BEBBER, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Petitioner seeks review of an order of the Board of Immigration Appeals denying her motion to reopen deportation proceedings to provide new evidence material to her request for suspension of deportation under 8 U.S.C. § 1254. The Board concluded that petitioner could not meet the statutory criteria for suspending deportation because her admitted arrests and convictions for shoplifting--crimes involving moral turpitude--prevented her from establishing that she was a person of good moral character. We review the Board's decision under an abuse of discretion standard, see Johnson v. INS, 962 F.2d 574, 576-77 (7th Cir.1992), and affirm.
 
 
 6
 Petitioner, a native of Scotland, was living in Northern Ireland in 1981 when she was injured in the blast from a car bomb. On the advice of her physician and lawyer, she came to the United States in June 1982 to visit her sister. After petitioner's three-month visitor's visa expired, she applied for asylum. The INS Director denied petitioner's asylum application on October 26, 1983. Petitioner was given until November 26, 1983, to depart voluntarily, but failed to do so.
 
 
 7
 In February 1984, the INS issued a show cause order to petitioner for having stayed in the United States longer than permitted, in violation of 8 U.S.C. § 1251(a)(2). At the initial deportation hearing in April, petitioner conceded deportability and renewed her applications for asylum and withholding of deportation. At the conclusion of the deportation hearing in July, the immigration judge found petitioner deportable and ineligible for asylum or withholding of deportation. He gave petitioner thirty days in which to depart voluntarily. Again, petitioner failed to depart.
 
 
 8
 Petitioner has since remained in the United States by filing repeated applications for asylum, applications for suspension, motions to reopen, and two previous petitions for review before this court. During this time she also has married, borne a child who is a United States citizen, and been widowed.
 
 
 9
 Having been adjudicated deportable, petitioner can remain in the United States only if she is afforded discretionary relief from deportation, such as a suspension of deportation. To qualify for a suspension of deportation, however, petitioner must establish, among other things, that she has been "physically present in the United States for a continuous period of not less than seven years immediately preceding the date" of applying for suspension, and that during those years, she "was and is a person of good moral character." 8 U.S.C. § 1254(a)(1).
 
 
 10
 A person cannot be considered to have good moral character if, during the requisite period, she has been "a member of one or more of the classes of persons ... described in ... subparagraphs (A) and (B) of section 1182(a)(2) of this title." 8 U.S.C. § 1101(f)(3). The classes of persons described in § 1182(a)(2)(A)(i) include "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of--(I) a crime involving moral turpitude (other than a purely political offense)." Petitioner admitted for the first time in the motion to reopen at issue here that, since 1982, she had been arrested on at least eight occasions for shoplifting; four of the arrests resulted in convictions and one of the arrests was yet to be tried.[1]
 
 
 11
 In her petition for review, petitioner asserts two challenges to the Board's conclusion that her admitted arrests and convictions for shoplifting preclude her from establishing the statutory criteria to qualify for a suspension of deportation. First, she argues that the provision of § 1182(a)(2)(A)(i) relating to crimes of moral turpitude is unconstitutionally vague and, therefore, void. Second, she argues that the crimes for which she was arrested and convicted do not rise to the level of crimes of moral turpitude, so the Board abused its discretion by concluding petitioner could not establish her good moral character without considering the particular circumstances surrounding petitioner's arrests and convictions. We address each argument in turn.
 
 
 12
 Petitioner contends that "because the statutory scheme is vague, [she] could not have known that her shoplifting offenses ... could have constituted conclusive proof that she was not a person 'of good moral character.' " Petitioner's Opening Br. at 7. In Jordan v. DeGeorge, 341 U.S. 223, 224-25, 229-32 (1951), the Supreme Court considered whether the phrase "crime involving moral turpitude" was so vague that it would not justify the deportation of an alien, twice convicted for defrauding the United States of tax revenues, pursuant to an immigration statute requiring the deportation of any alien sentenced more than once to a term of one or more years of imprisonment based on his or her conviction of any crime involving moral turpitude.
 
 
 13
 The Court first examined how judicial decisions have applied the term "moral turpitude," concluding that "[w]ithout exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude." Id. at 227. The Court next noted that the phrase "moral turpitude" "has been part of the immigration law for more than sixty years," id. at 229, and that it has "been used for many years as a criterion in a variety of other statutes" without being ruled unconstitutionally vague, id. at 230. Finally, the Court discussed the test statutory language must meet to pass constitutional muster.
 
 
 14
 We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. Impossible standards of specificity are not required. The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.
 
 
 15
 Id. at 231-32 (citations and footnote omitted). The Court concluded the "moral turpitude" language met the test. "Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." Id. at 232.
 
 
 16
 The same can be said of crimes of theft: both the courts and the Board have historically held that, regardless of the amount stolen or the sentence imposed, crimes of theft involve moral turpitude. See United States v. Villa-Fabela, 882 F.2d 434, 440 (9th Cir.1989), overruled in part on other grounds, United States v. Proa-Tovar, 975 F.2d 592 (9th Cir.1992) (en banc); Chiaramonte v. INS, 626 F.2d 1093, 1097 (2d Cir.1980); Soetarto v. INS, 516 F.2d 778, 780 (7th Cir.1975); Morasch v. INS, 363 F.2d 30, 31 (9th Cir.1966); Giammario v. Hurney, 311 F.2d 285, 286 (3d Cir.1962); Matter of Neely & Whylie, 11 I. & N.Dec. 864, 866 (1966); Matter of Garcia, 11 I. & N.Dec. 521, 523 (1966). We therefore reject petitioner's contention that the phrase "crime involving moral turpitude" is so vague that she could not have known her arrests and convictions for shoplifting would constitute proscribed activity under 8 U.S.C. § 1182(a)(2)(A)(i)(I). See also Soetarto, 516 F.2d at 780, in which the Seventh Circuit held that the Supreme Court's decision in DeGeorge foreclosed the circuit court from considering the argument of an alien convicted of theft that "the term 'crime involving moral turpitude' as used in the deportation statute is unconstitutionally vague."
 
 
 17
 One of the arguments petitioner advanced in her motion to reopen was that her "mental state during her continuous physical presence in the United States precludes a finding that she is not a person of good moral character." R. at 42. In support of this argument, petitioner contended:
 
 
 18
 [T]he Board is the proper body to consider whether Maureen's convictions preclude a finding of good moral character....
 
 
 19
 It would be important for the Board to consider whether Maureen's long term condition of severe depression affected her mental capacity to the point where her acts of shoplifting were not the product of a volitional mental state. Each instance of shoplifting must be examined by the Board individually in the context of Maureen's psychological condition at each specific time.
 
 
 20
 Id. at 43.
 
 
 21
 In denying the motion to reopen, the Board reiterated petitioner's argument on her mental state, and ruled:
 
 
 22
 It is well established that this Board cannot go behind the judicial record of criminal proceedings to determine the guilt or innocence of the alien. Matter of Goldeshtein, Interim Decision 3158 (BIA 1991). Consequently, no purpose would be served by considering the [petitioner's] psychological condition when she committed the offenses. In any event, those convictions prevent the [petitioner] from meeting the "good moral character" requirement, and therefore make it impossible for her to establish eligibility for suspension of deportation under section 244(a)(1) of the Act. Her motion, consequently, will be denied.
 
 
 23
 R. at 3.
 
 
 24
 Petitioner maintains that the Board misunderstood her argument. She acknowledges the Board could not question the validity of her criminal convictions in the deportation proceedings, see Trench v. INS, 783 F.2d 181, 184 (10th Cir.), cert. denied, 479 U.S. 961 (1986), but argues the Board could, nonetheless, consider whether extenuating circumstances mitigated the moral turpitude of the acts for which she was arrested and convicted.
 
 
 25
 Two district courts, addressing situations quite distinct from that here, have considered the particular circumstances of a crime of larceny in determining whether it constituted a crime of moral turpitude. See Diaz v. Haig, 594 F.Supp. 1, 4 (D.Wyo.1981); Tutrone v. Shaughnessy, 160 F.Supp. 433, 438 (S.D.N.Y.1958). Other courts, however, have rejected any invitation to review the particular circumstances surrounding a crime of larceny, see Chiaramonte, 626 F.2d at 1097; Soetarto, 516 F.2d at 780; Morasch, 363 F.2d at 31, except to determine whether the crime was "a purely political offense," and therefore excluded from consideration under § 1182(a)(2)(A)(i)(I), see Schieber v. INS, 520 F.2d 44, 49 n. 20 (D.C.Cir.1975). Even then, the court confined its inquiry to information contained in the judgments of conviction, which were part of the administrative record. Id.
 
 
 26
 Even if the Board could properly consider whether the particular circumstances surrounding an alien's conviction for larceny vitiate the moral turpitude normally associated with that crime--an issue that we do not decide--the Board did not abuse its discretion in failing to consider the evidence advanced here. Petitioner urged the Board to reopen the proceedings to consider evidence of her mental state which, she argued, showed she did not possess a "volitional mental state" at the time she committed each of the crimes. Petitioner did not clearly articulate, however, that she sought to introduce the evidence not to attack her larceny convictions, but to show her criminal acts, though larcenous, did not involve moral turpitude. The Board reasonably interpreted petitioner's argument as one seeking to attack her convictions, and, based on that interpretation, properly denied petitioner's request. Petitioner has not moved the Board to reconsider its decision on the ground that it misunderstood her argument. See 8 C.F.R. §§ 3.2, 3.8. Under the circumstances, we conclude the Board did not abuse its discretion in denying petitioner's motion to reopen.
 
 
 27
 Respondent's motion to supplement its brief is GRANTED, and the decision of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In her previous submissions to the immigration judge or the Board, petitioner either failed to mention her criminal record or swore she had no record