ALICE M. BATCHELDER, Circuit Judge,
concurring in part and dissenting in part.
Today’s decision, well-reasoned as much of it is, fails to adequately address one of Odeh’s central arguments, namely, whether she was prevented from presenting a complete defense at trial. The majority gives facially plausible reasons for the government’s being permitted to introduce at trial evidence that Odeh engaged in terrorism even though she was prohibited from testifying about her claims of torture.' But it is able to reach this conclusion only by tacitly adopting the district court’s heads-I-win-tails-you-lose application of § 1425(a) to Odeh. That court’s inconsistent application of the statute crippled Odeh’s defense at trial. Thus, while I agree with Parts I and III of the majority’s opinion and with much of the reasoning of Part II, I nevertheless respectfully dissent in part.
I.
From the proceedings in the district court, one might believe that there are two versions of § 1425(a) involved in this case. When the district court considered the admissibility of Odeh’s testimony regarding torture — testimony it found credible — it *986 spoke of § 1425(a) as dealing solely with whether Odeh acted “contrary to law” by lying under oath in obtaining U.S. citizenship. But when it considered the admissibility of the government’s evidence — such as the Israeli indictment — it mentioned an additional element, which it defined at trial as whether “it is reasonably likely that the United States Citizen and Immigration Services would have found [Odeh] ineligible for naturalization and denied her application if it had known the truth about [her] past.”
This inconsistency is significant. If this case is just about lying under oath, then I agree with the majority that there are no due process issues in admitting the Israeli court documents. Under this approach, Odeh’s Israeli criminal record would not be admitted to show that she in fact did any of the things of which she was convicted, but only that she lied about her past. Similarly, whether she was tortured would (apart from the possible effects of PTSD) be irrelevant to whether she lied.
But if this case is only about lying under oath, then I cannot see how allowing any of the objected-to portions of the Israeli indictment to go before the jury was not an abuse of discretion under Rule 403. As Judge Moore points out, the names of the victims and the prayer have almost no probative value and present a serious danger of unfair prejudice. Likewise, proving that Odeh lied under oath, and even that that lie was “material,” would not require evidence that she was charged with “placing] explosives in the hall of the Su-perSol in Jerusalem ... with the intention of causing death or injury.” The risk of unfair prejudice from this evidence was enormous, especially since Odeh was not permitted to testify at trial about her claims of torture. The word “terrorist” may never have been uttered before the jury, but it was doubtless in the minds of everyone present.
The indictment was, of course, probative with respect to what the immigration authorities would have done had they known the truth about Odeh’s past. But the district court’s conclusion that her testimony about being tortured was inadmissible seems to me to be defensible only if one ignores the what-would-immigration-authorities-have-done element. Indeed, the government appears to have admitted as much in one of its motions in limine:
While evidence of the circumstances and process relating to a conviction would have been relevant to United States Citizenship and Immigration Services had defendant disclosed her criminal record in her naturalization application (as she was obligated by law to do), it has no relevance to this case. Rather, this case focuses on the truthfulness of her answers in the immigration process, not the level of due process afforded her in Israel.
R. 66 at PagelD # 593.[1] The majority’s summary conclusion that Odeh’s constitutional arguments have “no bearing” on the admissibility of the Israeli documents under the MLAT because “the jury was tasked with deciding only whether the elements of § 1425(a) had been met” is likewise inadequate. Maj. Op. supra at 981. That evidence was used not only to prove *987 that Odeh in fact had been arrested, charged, convicted, and imprisoned, but also that she was not a person of good moral character.
The Fourth Amendment exclusionary rule applies to foreign searches and seizures if the defendant can show that “the conduct of foreign police shocks the judicial conscience.” United States v. Valdivia, 680 F.3d 33, 51 (1st Cir.2012). And “[it] is well settled that the Bill of Rights limits both the federal government’s treaty-making powers as well as actions taken by federal officials pursuant to the federal government’s treaties.” Sahagian v. United States, 864 F.2d 509, 513 (7th Cir.1988). The evidentiary concerns may be different in this circumstance, however, because the jury was instructed to step into the shoes of the immigration authorities. If Odeh had told the truth, those officials would doubtless have looked at this evidence. By the same token, however, they would have also considered Odeh’s claims of torture.
Thus, the majority opinion fails to address a glaring tension in this case, namely, how the jury could fairly determine whether Odeh’s past rendered her inadmissible without ever hearing what she would have told the immigration authorities about the story behind her criminal record. The upshot of all this is that Odeh is left somehow holding two short ends of the same stick.
II.
In fairness to the majority, the inconsistency in the district court’s approach is not challenged on appeal. But it should be evident by this point that the arguments that are before us cannot be adequately confronted without first deciding whether the government must prove that Odeh’s naturalization application likely would have been denied if the immigration authorities had known the truth about her past. Fortunately, this is not a difficult question. Section 1425 is a two-part statute. Compare 18 U.S.C. § 1425(a) with 18 U.S.C. § 1425(b). And we have held that these two parts provide distinct “means by which unlawful naturalization can be obtained. Under the statute one can procure naturalization ‘contrary to law1 (§ 1425(a)) or naturalization to which one is not entitled (§ 1425(b)).” United States v. Damrah, 412 F.3d 618, 622 (6th Cir.2005). Odeh was charged only under § 1425(a), and reading that provision to incorporate immigration laws such as 8 U.S.C. § 1182(a)(2)-(3), which govern eligibility to receive immigration benefits, would eliminate the distinction between § 1425(a) and (b), violating “one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.” Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (internal quotation marks and brackets omitted). But see United States v. Latchin, 554 F.3d 709, 712-13 (7th Cir.2009) (holding that a conviction under § 1425(a) can stand only if the defendant “procured” naturalization, that is, whether “it is fair to infer that the [defendant] was actually ineligible”) (quoting Kungys v. United States, 485 U.S. 759, 784, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (Brennan, J., concurring) (internal quotation marks omitted)).[2]
*988 ill.
Whether a defendant’s naturalization application would have been denied if the immigration authorities had known the truth about her past is not an element of § 1425(a). In light of this, I would have held that the district court abused its discretion in allowing the objected-to portions of the Israeli indictment to go before the jury and that this error was not harmless. This case should be remanded for a new trial. From the majority’s decision to the contrary, I respectfully dissent.

. It bears mentioning that some of our sister circuits have held that the validity of "a criminal conviction duly obtained under the laws of a foreign country” may not be challenged in an immigration proceeding. Chiaramonte v. Immigration & Naturalization Serv., 626 F.2d 1093, 1098 (2d Cir.1980). But, as the word “duly” suggests, this rule is not so ironclad that courts have brooked no exceptions. For example, the Seventh Circuit has held that this rule does not apply when “the proceeding that resulted in the conviction was demonstrably, and it is fair to say admittedly, a travesty — a parody' — of justice.” Doe v. Gonzales, 484 F.3d 445, 451 (7th Cir.2007).

. The Latchin court reached this conclusion by looking to the Supreme Court’s understanding of "procurement” as used in 8 U.S.C. § 1451(a), the civil denaturalization statute. United States v. Latchin, 554 F.3d 709, 713 (7th Cir.2009) (citing Kungys v. United States, 485 U.S. 759, 108 S.Ct. 1537). Significantly, § 1451 does not have the two-part structure of 18 U.S.C. § 1425, and Kungys is thus inapposite.