883 F.2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Polycarp Christopher TIZHE, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 88-2563.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1989.
Decided Aug. 3, 1989.
 
 Charles Gordon for petitioner.
 Donald A. Couvillon (Robert Kendall, Jr., Assistant Director, Office of Immigration Litigation, Civil Division, Department of Justice, John R. Bolton, Assistant Attorney General on brief) for respondent.
 Before K.K. HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Polycarp C. Tizhe appeals to this court from a deportation order entered by an immigration judge (IJ) on September 28, 1987.[1]
 
 I. Background
 
 2
 Tizhe is a native and citizen of Nigeria who entered the United States on February 2, 1982 as a nonimmigrant under a pleasure visa. Despite the expiration of the visa on August 2, 1982, Tizhe illegally remained in the United States. In March of 1985, Tizhe apparently married an American citizen and thereafter became the father of an American citizen child.
 
 
 3
 On February 2, 1987, Tizhe pleaded guilty to and was convicted of one count of bank fraud which he committed on or about November, 1985 to on or about February 24, 1986. Tizhe was sentenced to 18 months imprisonment, of which he served 10 months.
 
 
 4
 On August 18, 1987, the INS issued an Order to Show Cause against Tizhe, charging him with deportability under section 241(a)(4) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. Sec. 1251(a)(4), in that he had been convicted of a crime involving moral turpitude committed within five years of his entry into the United States.[2] Bond was set at $10,000 which was later reduced to $4,500.[3]
 
 
 5
 The deportation hearing was scheduled to begin on September 17, 1987. At the beginning of the hearing, the IJ inquired of Tizhe whether he had been provided with a list of legal service attorneys and whether he wished to have counsel represent him. Tizhe replied affirmatively to both questions and indicated that he had already been looking for an attorney to represent him at the hearing. Therefore, the IJ continued the hearing until September 22, 1987 (Tuesday) at 3:00 p.m.
 
 
 6
 Tizhe appeared at the resumed hearing without counsel. He explained that he had attempted to obtain counsel and thought that he had engaged a Nancy Kelly, but she had informed him that she was to go on vacation. Kelly apparently gave him another list of attorneys, but they were all private attorneys who required fees. Tizhe stated that he needed another weekend for his wife to raise the money to hire an attorney and requested a continuance until Monday, September 28. The IJ granted the request on the condition that the hearing would proceed at that time, regardless of whether Tizhe had counsel. Tizhe agreed to the condition.
 
 
 7
 On September 28, Tizhe appeared again without counsel. The IJ noted the fact for the record and stated: "Sir, I gave you a chance to appear with an attorney today. One last chance. Do ... were you able to get an attorney?" Tizhe replied negatively and the IJ continued, "Okay. We're going to have to proceed without an attorney, sir." Tizhe said, "Yeah." The IJ proceeded with the hearing after apprising Tizhe of his rights during the hearing. Tizhe admitted the allegations of the order to show cause, but denied that he was deportable.[4]
 
 
 8
 After the IJ found Tizhe deportable, Tizhe inquired about his American citizen wife and native born son. The IJ informed Tizhe that his wife and son were not forced to leave the United States. The IJ also stated that Tizhe's wife could petition for him to reenter the United States, but that Tizhe would need a waiver of inadmissibility because of the conviction for a crime involving moral turpitude. The IJ told Tizhe that he could apply for the waiver during the course of his visa processing through the American consulate. The IJ did not inform Tizhe of any other options available to him. In his oral decision, the IJ observed:
 
 
 9
 The Respondent has made no other application for relief from deportation. His wife, who allegedly is a United States citizen, has apparently filed no visa petition for respondent so as to make him eligible for adjustment of status with a waiver.[5]
 
 
 10
 On appeal, the BIA affirmed the IJ's finding of deportability and concluded that Tizhe's contention that the IJ had given him insufficient opportunity to secure counsel was meritless.
 
 
 11
 In dismissing the appeal, the BIA further stated:
 
 
 12
 The respondent's remaining arguments pertain to discretionary relief from deportation. The respondent did not apply for relief from deportation, nor does he appear to be eligible for any form of relief from deportation.
 
 
 13
 This court has jurisdiction to review final deportation orders pursuant to section 106(a) of the Act; 8 U.S.C. Sec. 1105a(a).[6] Therefore, we proceed to the issues raised in the petition to review.
 
 II. The Petition for Review
 
 14
 In immigration matters, Congress has gone to considerable lengths to insure that a would-be resident of the country will not suffer disadvantage through unfamiliarity with the language, lack of appreciation of the need for professional legal advice, or other inadequacies in the presentation of the case. Tizhe complains of two shortcomings in his deportation hearing which allegedly resulted in a denial of legal representation and a failure to apply for discretionary relief from deportation.
 
 A. Legal Representation
 
 15
 Aliens have a statutory right to be represented by counsel in their deportation hearings at no expense to the government. Section 242(b) of the Act, 8 U.S.C. Sec. 1252(b); see also Section 292 of the Act, 8 U.S.C. Sec. 1362. Aliens must be told of the statutory right to counsel and given a list of free legal services. 8 C.F.R. Secs. 242.1(c), 242.16(a).
 
 
 16
 Aliens also have a fifth amendment right to due process in their deportation proceedings. Castro-O'Ryan v. United States Department of Immigration and Naturalization, 847 F.2d 1307, 1313 (9th Cir.1988); Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir.1986). Due process is satisfied if the alien, with or without representation, has a full and fair hearing. Ramirez v. INS, 550 F.2d 560, 563 (9th Cir.1977). Due process claims involving deportation proceedings are reviewed de novo by courts of appeals. Colindres-Aquilar v. INS, 819 F.2d 259, 261 (9th Cir.1987). It is incumbent upon the appellant to show prejudice. Id.
 
 
 17
 If an alien cannot afford counsel, or cannot secure free representation after a reasonable opportunity to obtain counsel, and has not shown good cause for additional time, he must represent himself. Vides-Vides v. INS, 783 F.2d 1463, 1469 (9th Cir.1986). See 8 C.F.R. Secs. 3.27; 242.13. Furthermore, the decision whether to grant a continuance will not be overturned except upon a showing of clear abuse. Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985).
 
 
 18
 A review of the record and the arguments advanced by Tizhe do not disclose any abuse of discretion on the part of the IJ. The IJ complied with the various regulations which required that Tizhe be informed of his right to legal representation at his own expense and that Tizhe be given a list of free legal services. See 8 C.F.R. Sec. 242.16(a). The IJ also granted two continuances so that Tizhe could obtain counsel.
 
 
 19
 Tizhe attempts to focus attention on the short length of the continuances and the "great haste" with which the IJ proceeded to the deportation hearing when Tizhe failed to appear with counsel a third time. However, the record amply reveals that the brief continuance period was all that Tizhe had requested and that he specifically agreed to go forward with the hearing, unrepresented, should his efforts fail to secure counsel when the deportation proceeding resumed after the second continuance.[7] See Delgado-Corea v. INS, 804 F.2d 261, 263 (4th Cir.1986) ("An alien can choose to waive counsel and such a waiver will be upheld if voluntarily given.") Therefore, we affirm the BIA's decision that the IJ's treatment of the right to counsel issue should not be considered an abuse of discretion.
 
 B. Discretionary Relief
 
 20
 Tizhe also contends that he was prejudiced by the IJ when he failed to perform the duty imposed by 8 C.F.R. Sec. 242.17(a) to inform Tizhe of his right to apply for an adjustment of status under 8 U.S.C. Sec. 1255, together with a waiver of inadmissibility under 8 U.S.C. Sec. 1182(h), prior to entering the deportation order. Tizhe requests this Court to remand his case to the BIA and order it to reopen his deportation hearing to permit him to apply and to seek adjudication of his application for the discretionary relief.
 
 
 21
 When one considers Tizhe's case, his deportability appears proven beyond a shadow of a doubt. Overstaying a pleasure visa and a guilty plea to an indictment for bank fraud create abundant reason for deportation and adequately support the IJ's order to deport Tizhe. However, Tizhe's complaint does not attack the truth of those facts, but asserts that he may still be permitted to remain in the United States because Congress recognizes that certain equities and circumstances may relieve an alien who is married to a United States citizen from the harshness of deportation.
 
 1. The Adjustment of Status Regime
 
 22
 Congress has determined that certain aliens who have been legally admitted into the United States on a temporary basis may remain in the United States as permanent legal residents if they successfully apply for an adjustment of status. See Section 245 of the Act; 8 U.S.C. Sec. 1255.[8]
 
 
 23
 Moreover, in the new Immigration and Nationality Act enacted in 1952, Congress specifically intended to permit an alien to obtain the required immigrant visa to apply for reclassification of status "without the necessity of leaving the United States." See H.R.Rep. 2096, 82d Cong., 2d Sess. 128, reprinted in 1952 U.S.Code Cong. & Admin.News 1653.[9] That was achieved by authorizing the Attorney General (and, under his delegation, Immigration Service officers) to grant permanent resident status. See 8 U.S.C. Sec. 1255. See also Jain v. INS, 612 F.2d 683, 686-87 (2d Cir.1979), cert. denied, 446 U.S. 937 (1980) (nonimmigrant need not leave country to apply for adjustment of status, but burden is on the alien to persuade Immigration Service "to exercise its discretion favorably for this extraordinary relief.") By so doing, "Congress afforded aliens present in this country on nonimmigrant visas a marked advantage over the alien who could receive an immigrant visa only from a consular officer abroad." Randall v. Meese, 854 F.2d 472, 474 (D.C.Cir.1988). In particular, an alien in the United States may obtain full consideration de novo of an application for adjustment of status in deportation proceedings. Id. at 474-75. See 8 C.F.R. Secs. 242.17(a), 245.2(a)(5)(ii).[10] The advantage is of substantial significance because of the plenary hearing, judicial review and due process protections required by law for deportation proceedings which are otherwise unavailable to the alien seeking an immigrant visa through an American consular office abroad. See cf. Joshi v. District Director, INS, 720 F.2d 799, 800 (4th Cir.1983) (alien in a deportation proceeding has "many substantive and procedural benefits not available to an excludable alien").
 
 
 24
 Generally, adjustment of status is not available to an alien who is in unlawful immigration status on the date of filing the application. 8 U.S.C. Sec. 1255(c). However, Congress specifically exempted an alien who is an immediate relative from the restrictions imposed by Sec. 1255(c),[11] indicating its interest in favoring familial relationships where United States citizens are involved.[12] See Sang Seup Shin v. INS, 750 F.2d 122, 127 (D.C.Cir.1984). Therefore, the fault associated with overstaying a visa is not relevant to whether an alien who is an immediate relative is afforded an opportunity under the statute to apply for an adjustment of status, although it may become relevant in the Attorney General's decision to approve or deny the application in his discretion.[13]
 
 
 25
 In Tizhe's case, although the fact that he overstayed his visa is irrelevant to whether he may apply for adjustment of status, the fact of his crime of bank fraud appears to be relevant to whether he is statutorily eligible for adjustment of status. Because his crime is a basis for excluding an alien from admission in the first instance, see 8 U.S.C. Sec. 1182(a)(9), it also precludes an application for an adjustment of status.[14] However, again Congress has provided an exception of which Tizhe may avail himself. Section 212(h) of the Act permits an alien in Tizhe's circumstances to apply for a waiver of inadmissibility.[15]
 
 
 26
 Therefore, Tizhe is not automatically ineligible for an adjustment of status under the requirements of the statute, although we emphasize that it remains his burden to convince the Attorney General to exercise favorably his discretion on both the waiver of the crime and the reclassification applications.
 
 2. The Deportation Hearing
 
 27
 Tizhe contends that he was denied a full and fair hearing because the IJ failed to inform him, as mandated by the regulation at 20 C.F.R. Sec. 242.17(a), of his right to claim an adjustment of status with a waiver of inadmissibility as the spouse or parent of an American citizen. Section 242.17(a) provides, in part, that
 
 
 28
 [t]he special inquiry officer shall inform the respondent of his apparent eligibility to apply for any of the benefits enumerated in this paragraph [which includes an adjustment of status and a waiver of inadmissibility] and shall afford him an opportunity to make application therefor during the hearing.
 
 
 29
 8 C.F.R. Sec. 242.17(a) (emphasis added).
 
 
 30
 The clear language directs the IJ to inform the alien of discretionary relief for which the alien is apparently eligible. See cf. Duran v. INS, 756 F.2d 1338, 1341 (9th Cir.1984) (Sec. 242.17(a) imposes an affirmative duty on the IJ to inform an alien who was "apparently eligible" for suspension of deportation under 8 U.S.C. Sec. 1254 of the right to apply for discretionary relief during the deportation hearing).
 
 
 31
 At his deportation hearing, Tizhe raised his concern about his American family.[16] This should have and apparently did alert the IJ that Tizhe could apply for discretionary relief on the basis that he had an American wife and American child. The IJ, however, misinformed Tizhe that the relief he might seek could only be obtained after deportation once he was returned to Nigeria.[17] Tizhe was not permitted to make an application before his deportation was ordered. Whether such foreclosure amounts to a due process violation depends in large part on whether Tizhe can show that he was prejudiced by it. However, we do not reach that part of the analysis because we agree with INS' assertion that Tizhe's complaint that he was precluded from applying for discretionary relief by way of change of status is prematurely presented to this Court. INS points out that Tizhe has not yet filed any application for adjustment of status nor has his wife filed an I-130 form requesting immediate relative status. However, those reasons for finding the case prematurely before us do not fully dispose of the matter.[18]
 
 
 32
 Instead, we are persuaded to defer our review under the authority of Roque-Carranza v. INS, 778 F.2d 1373 (9th Cir.1985) brought to our attention by INS. In Roque-Carranza, the alien petitioned for review, arguing that he was denied a full and fair hearing on his political asylum claim because his counsel had failed to discover facts which would prove a well-founded fear of persecution. The Ninth Circuit recognized that the INS regulations set out a mechanism for the reopening of deportation hearings in such situations where the "new facts" were material and previously unavailable. Id. at 1373. The Ninth Circuit noted that the BIA had discretion to reopen and stated that it "will not supersede this ordinary reopening procedure by compelling the BIA to reopen the hearing." Id. at 1374. Because the petitioner's due process claim might be addressed and corrected by resort to the agency's procedure, the Ninth Circuit concluded that permitting a motion to reopen to be filed and disposed of before judicial review would "avoid any premature interference with the agency's processes and, in addition to affording the parties and courts the benefit of the agency's expertise, it will compile a record which is adequate for judicial review." Id. See also Dhanqu v. INS, 812 F.2d 455, 460 (9th Cir.1987) ("if the BIA is permitted to address Dhangu's claims first, it may take action that would render unnecessary our consideration of constitutional issues.").
 
 
 33
 A motion to reopen is also an available course of action for Tizhe. The regulation at 8 C.F.R. Sec. 3.2 provides:
 
 
 34
 Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.[19]
 
 
 35
 Therefore, Tizhe should pursue a motion to reopen his deportation hearing which, if granted, will correct the due process claim he now advances to us. Should the BIA deny his motion to reopen, Tizhe may challenge that decision on due process grounds in this Court which will consider de novo the BIA's refusal to reopen. Roque-Carranza, 778 F.2d at 1374.
 
 
 36
 Accordingly, the petition for review is DENIED and the decision of the BIA is AFFIRMED. However, the order of deportation shall be stayed for thirty days from the filing of this opinion, to allow time for petitioner to file a motion to reopen and, if a motion to reopen is filed with the BIA, for such further time as is necessary for the disposition of the motion by the BIA. See id.
 
 
 
 [1]
 Tizhe appealed the order to the Board of Immigration Appeals (BIA) without filing a brief explaining his arguments. The BIA affirmed the IJ's decision on February 4, 1988
 
 
 [2]
 It had been more than five years between entry and conviction. However, what counts is the lapse of time (between three years and ten months and four years and one month) between entry and commission of the crime of moral turpitude
 
 
 [3]
 Bond was not paid until shortly after Tizhe was found to be deportable. Thus, he remained incarcerated under INS custody throughout his hearings
 
 
 [4]
 Tizhe claimed that he could not be deported since his conviction was not within five years of entering the United States. However, under the statute, it is the commission of the crime of which the alien is convicted, not the conviction therefor, which must have been within five years of entering the United States. See 8 U.S.C. Sec. 1251(a)(4)
 
 
 [5]
 At the beginning of the hearing, Tizhe stated that he wished to apply for a waiver under section 212(c) of the Act, 8 U.S.C. Sec. 1182(c). Tizhe informed the IJ that his wife had filed that day in Alexandria, Virginia a petition for Tizhe for permanent residence so that he could apply for a waiver under section 212(c). The IJ explained that Tizhe was ineligible for that application because he was not a lawful permanent resident for the last seven years
 
 
 [6]
 We find INS' contention that we have no jurisdiction because Tizhe has failed to exhaust his administrative remedies with respect to his discretionary relief claim without merit. The exhaustion provision of section 106(c) of the Act, 8 U.S.C. Sec. 1105a(c) requires that the alien "exhaust[ ] the administrative remedies available to him as of right under the immigration laws and regulations...." An appeal to the BIA, which Tizhe made, is a matter of right; and, contrary to the suggestion of INS, we read Tizhe's notice of appeal as raising, albeit inarticulately, his question of discretionary relief. Apparently, the BIA did, too, because of its ruling in that regard
 If INS' position is that we lack jurisdiction on exhaustion grounds because a motion to reopen was not first pursued, we disagree. A motion to reopen, being a matter completely within the discretion of the BIA, see INS v. Jong Ha Wong, 450 U.S. 139 (1981); 8 C.F.R. Sec. 3.2, is not an administrative remedy as of right which must be exhausted in every case to perfect our jurisdiction.
 
 
 [7]
 Although it is far from clear, Tizhe appears to argue that the IJ's failure to afford him more time to obtain counsel also denied him a fair hearing, raising a due process claim. However, the claim must also fail because Tizhe has failed to show any prejudice. Tizhe admitted the facts supporting the IJ's finding of deportability and any mistakes he made during the hearing did not affect those facts. Moreover, the discretionary relief for which Tizhe wishes to apply may still be pursued by a motion to reopen the present case because the IJ failed to inform Tizhe of that option as required by the regulation at 8 C.F.R. Sec. 242.17(a)
 
 
 [8]
 In order to qualify for adjustment of status, an alien must establish that (1) an immigrant visa is immediately available to him at the time his application is filed, and (2) he is eligible to receive an immigrant visa and is admissible to the United States. 8 U.S.C. Sec. 1255. Tizhe's application would be contingent, in part, on his American citizen wife's filing of an I-130 petition requesting that Tizhe be classified as an "immediate relative," a status that would exempt him from numerical limitations on immigrant visas. 8 U.S.C. Sec. 1151(b) (only "children, spouses, and parents of a citizen of the United States" can qualify for "immediate relative" status)
 
 
 [9]
 Prior to 1935, an alien already in the United States had to leave the country to apply to a United States consular officer abroad for the immigrant visa required to adjust status from that of a nonimmigrant to that of a permanent resident. See 8 U.S.C. Sec. 202(a) (1934)
 "To reduce the hardship and inconvenience of this 'depart and seek reentry' procedure, the Immigration Service later devised a 'pre-examination plan' which made accessible to some aliens a less expensive process...." See S.Rep. 1515, 81st Cong., 2d Sess. 603 (1950); 8 C.F.R. Sec. 142 (Supp.1941). The alternative permitted an alien to enter Canada briefly to apply for a visa with the United States consul there. See generally Randall v. Meese, 854 F.2d 472, 473-74 (D.C.Cir.1988).
 
 
 [10]
 A nonimmigrant alien may pursue a reclassification of status prior to the risk of deportation by filing the requisite forms with the district director having jurisdiction over his place of residence. However, once an alien has been served with an order to show cause why he should not be deported, jurisdiction to consider an application to adjust status lies exclusively with the immigration judge in the deportation proceeding. See 8 C.F.R. p 245.2(a)
 
 
 [11]
 Section 1255(c) provides, in part, that:
 Subsection (a) of this section [adjustment of status] shall not be applicable to ... an alien (other than an immediate relative as defined in section 1151(b) of this title or a special immigrant described in section 1101(a)(27)(H) or (I) of this title) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States....
 
 
 [12]
 See In re Ibrahim, 18 I. & N. Dec. 55, 57 (BIA 1981) (The Act "makes immediate relative status a special and weighty equity.")
 
 
 [13]
 See Kim v. Meese, 810 F.2d 1494, 1497 (9th Cir.1987) ("[A]djustment of status ... is predicated upon both a showing of [statutory] eligibility and a favorable exercise of agency discretion.")
 
 
 [14]
 A requirement of an adjustment of status is that the alien is admissible to the United States. See 8 U.S.C. Sec. 1255
 
 
 [15]
 Section 212(h) of the Act, 8 U.S.C. Sec. 1182(h) provides that an alien who was previously convicted of a crime involving moral turpitude who is also a spouse or parent of an American citizen might obtain a waiver of excludability and the grant of lawful residence if the alien establishes to the satisfaction of the Attorney General that the alien's exclusion would cause extreme hardship to the immediate relative and that the alien's admission would not be contrary to the national welfare. Extreme hardship often is based on financial dependence or medical reasons. See Chiaramonte v. INS, 626 F.2d 1093 (2d Cir.1980); Matter of H, 14 I. & N. Dec. No. 185 (1972). The alien must show great actual or prospective injury. Re Nqai, I. & N. Interim Dec. No. 2989 (Comr.1985)
 Congress' underlying policy concern recognizes the family unit equity and affords preferential treatment even to aliens who are deportable because of a crime. The requirement that an alien must show extreme hardship to the citizen family member insures that only the most meritorious cases involving potential family separation will result in a family's remaining intact and in the United States as opposed to the harsh choice faced by American citizen family members between separation and living outside of the United States. Sadness over the separation or resulting financial difficulties do not demonstrate extreme hardship. See Chiaramonte, 626 F.2d at 1101.
 
 
 [16]
 Tizhe also had attempted to apply for section 212(c) discretionary relief, 8 U.S.C. Sec. 1182(c), for which he was ineligible since he was not originally admitted as a permanent resident. Tizhe had informed the IJ that his wife was that same day in Alexandria, Virginia filing a petition in his behalf. Although it is not clear from the record, that petition in all probability was the I-130 form for immediate relative status
 
 
 [17]
 The information the IJ gave Tizhe was also incomplete. Once Tizhe was deported and returned to Nigeria, he could not gain admittance to the United States without obtaining yet another waiver of inadmissibility in addition to the waiver for his crime. The second waiver would be required because Tizhe could be excluded for having been deported once from the United States. See 8 U.S.C. Sec. 1182(a)(19). The increased difficulty in securing the second waiver due to time lags and bureaucratic transmittals between the American consulate in Nigeria and the Attorney General's office can result in lengthy family separations. Reunion in the United States is rare given the additional discretionary hurdle and the lack of any due process protections for proceedings of this nature initiated outside the United States where judicial review is severely limited or not permitted at all. See Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (generally, denial of visas to aliens is not subject to review by the federal courts; however, denials of waivers of exclusion may be reviewed solely to determine whether a facially legitimate and bona fide reason exists for the denial of the waiver)
 
 
 [18]
 At oral argument on January 9, 1989, it was disclosed that the I-130 form has been completed and signed by Tizhe's wife. According to Tizhe's counsel, the INS office would not accept the I-130 form because it had no jurisdiction to process the petition while the case was being adjudicated. The regulations appear to bear this out. See 8 C.F.R. Secs. 204.1(a)(2)(i); 245.2(a). Consequently, Tizhe cannot apply for discretionary relief unless the deportation hearing is reopened. Moreover, there is a factual question as to whether the I-130 form had been tendered by Tizhe's wife to the agency's office in Alexandria, Virginia on the day of the deportation hearing. See supra note 16
 
 
 [19]
 See also 8 C.F.R. Sec. 3.8. The fact that Tizhe may be unable to assert any "new evidence" in order to reopen his case does not defeat a motion to reopen where the agency has failed to follow its own regulations to inform him of his right to apply for relief in the first place. See Duran, 756 F.2d at 1341-42 (denial of motion to reopen to apply for suspension of deportation was an abuse of discretion where the alien could not assert "new evidence" due to the agency's failure to inform her of her right to apply for relief during her deportation hearing as required by Sec. 245.17(a))